Nott, J.,
delivered the opinion of the court:
This is an action to recover the net proceeds of 262 bales of cotton now in the treasury, and which it is alleged amount to $60,000. The case has been tried before, but there was an ambiguity in the evidence, leaving the court in doubt as to the precise number of bales taken from the claimant’s plantation; yet, inasmuch as the claimant had shown a meritorious cause of action, it seemed a proper case to be remanded to the docket under Rule xlix, which was accordingly ordered; and the witness, Captain James T. Organ, was produced and re-examined before Judge Loring, at chambers.. This re-examination leaves the case clear, and establishes the following facts :
Mrs. Varina B. Gaither, during the year 1863, was the owner of a plantation in Concordia parish, Louisiana, known as the Amandlia plantation. In July of that year the United States forces took possession of the plantation, and it was put in charge of Captain James T. Organ, of the quartermasters’ department. With the workmen then on the plantation, Captain Organ ginned 67 bales of cotton, which he turned over to the quartermaster at Natchez, by whom it was turned over to the agents of the treasury. The plantation was then leased by one G. B. Fields, a commissioner for leasing abandoned plantations, to a firm by the name of Ware & Williams. This firm was to pick and gin the cotton then upon the plantation, on shares, and the share of the defendants appears to have passed through the hands of Captain Organ. As the net proceeds of this lessee cotton, now in the treasury, amount to about $224 per bale, it is evident that the agent of the government in effect paid that enormous sum for *193 picking and ginning the cotton, a transaction wbicli appears the more nefarious wlien it is known that 50 bales of this had already been picked by Mr. Joseph Winchester, a friend and representative of the owners, and made a part of that turned over by the lessees. But, however fraudulent the transaction may have been, this court cannot go beyond the proceeds which have actually found their way into the treasury, and the claimants in such cases must seek their further relief in an action against the parties who have conspired to defraud them.
Of the cotton which came from the parish of Concordia, it appears by the returns from the Treasury Department that at least 262 bales may be safely credited to the Amandlia plantation, and that the net proceeds of these 262 bales amount to the sum of $58,422 98.
The right of the claimant to these proceeds is sufficiently proven. The plantation was her separate property, in her own right, inherited from her father; and she and her husband were in possession of the plantation and the crops when dispossessed by the military forces. Since then her husband has died, and no question can be raised but that under the civil law of Louisiana the proceeds belong solely to her. The only remaining question is as to her loyalty. Major General Slocum was examined as a witness in the case, and testified':
“I had command of the department of the Mississippi in the spring ■of 1864. In the discharge of my duties I visited Natchez several times. I was invited by Mr. Gaither to make my headquarters at the house of his mother, Mrs. Stanton, which I did. While there I conversed with Gaither more or less on matters connected with the war, and read several speeches he had made in opposition to the secession movement. The impression made on me, from the conversation with the family and their treatment of the Union soldiers, was the family had been and were Union people. I knew Mrs. Gaither personally. They treated our folks very kindly. I never talked with the female portion of the family upon political topics. I judge of her sentiments by her kind treatment of myself and other officers and soldiers, and . saw nor heard anything to lead me to a different opinion.
“ I know Judge Winchester, of Natchez. Judge Winchester was considered by all parties as loyal to the United States, before,and after the secession. He was an aged gentleman of the very highest standing in the community, and not leaving, he was suffered by common consent to express his opinions.”
This Judge Winchester was also a witness in the case, and testified that he “ has always • known the claimant as a quiet domestic lady, *194 taking no part in politics and in no way responsible for tbe political-troubles of the past several years ; has never known her to be otherwise than loyal to the United States government, nor to have given any aid or comfort to the recent rebellion, and witness thinks, from his intimacy with the family, that had she done so he would have known it.”
Her mother, Mrs. Huida L. Stanton, says “that in the fall of A. D, 1863, said claimant was coming in her carriage from Ballina plantation, in Concordia parish, belonging to witness, about twenty miles from Amandlia. plantation, when said Varina met or overtook in the woods, along the road in the woods, a United Stales soldier, who stated that he had just escaped from a Confederate prison in Alexandria, and that he was hiding himself from the Confederates and trying-to make his way into the United States lines at Vidalia; he, at that time, was outside of the United States lines and within the Confederate lines; said Varina took said soldier in the carriage and brought him within the United States lines and left him safely at Vidalia. Generals Canby, Slocum, Gresham, and their staff officers, when in Natchez, had quarters with witness at her residence, at which time claimant was staying with her.” .
Mrs. Nancy Davis, a freedwoman, a witness called and examined by the claimant, says : “ Her name is Nancy Davis; her occupation, waiting woman; her age, about forty-eight years. Witness has lived with the claimant and her family for the last twenty-two years, and has had as good opportunities as anybody could have of knowing whether said claimant was loyal to the United States government, and from-such knowledge states that said claimant has been loyal to the United States, and has never given any aid or comfort to the recent rebellion.. Witness was not with the claimant when she brought the United-States soldier within the United States lines at Vidalia, but knew of it at the time.”
Captain Organ, the officer in charge of the plantation also testifies l “ I knew said claimant, Varina B. Gaither and Horace Gaither, from the early fall of 1863 up to the date of his death, and have never heard either of them say anything, or know of their doing anything, inconsistent with loyalty or prejudicial to the interests of the United States. That said Horace Gaither was an outspoken loyal man, and thereby incurred the displeasure, hatred, and persecution of neighboring rebels j so that there is no doubt in my mind that, in his real sentiments and actions, he was uniformly and unquestionably loyal and true to the-United States government. The claimant, Mrs. Varina B. Gaither, *195 is a quiet, modest, unassuming lady, and though she never said much, I have no doubt of her loyalty to the government.”
There was also a number of other witnesses examined, whose testimony confirms that which has been quoted. Finally, the defendants were represented by able counsel at-the examination, and have offered no testimony to contradict this of the claimant. We have subjected this case to an unusually rigid scrutiny, on account of the large amount involved, and are fully satisfied of the claimant’s right to recover.
The judgment of the court is that the claimant recover the net proceeds of 262 bales of cotton, amounting in the aggregate to $58,422 98.