Weldon, J.,
delivered the opinion of the court:
On the 12th day of January, 1891, the claimant filed in the clerk’s office a motion in substance as follows:
“Comes now the claimant, by McDonald, Bright, and Fay, his attorneys, and moves the court for a rule on the Postmaster-General to furnish, for use in the trial of this cause, certified copies of the orders and correspondence, about June and July, 1886, relative to the increase of the mail, messenger, station, and transfer service upon route 9072, Philadelphia, J. T. Brown, contractor, by addition of service not specified in the advertisement for the contract beginning July 1,1886, and the orders relieving the contractor of such service — i. e., all papers in connection with ordering the service onto said route, the objections. thereto, and the ordering it off.”
The motion was allowed.
On the 28th day of January, 1891, the Assistant Attorney-General filed a motion in substance as follows:
“And now comes the Attorney-General, and moves that the request granted on motion of plaintiff January 12, A. D. 1891, for information from the Hon. John Wanamaker, Postmaster-General, be revoked, and the Postmaster-General be informed that he. need take no further steps in the premises.”
The suit in which the motions are made is a proceeding against the defendants, to recover compensation for services rendered the Post-Office Department in the mail service, in the city of New York, between the various depots and the- steam boat landings in said city; and the' evideuce sought to be obtained from the Department is the ruling of the Department in reference to the same kind of a contract, in the city of Philadelphia, for like service. The contracts with reference to the service in New York and Philadelphia are identical in their *217 provisious, and relate to similar subject-matter. The purpose of the call is to show that the defendants, through their officers, have given to a similar contract the construction contended for by the claimant. It is insisted by counsel for claimant that the court should not determine the legal propriety of the call, by a decision of the question, as to whether the evidence when offered would be competent; that it is sufficient that the motion is made by a litigant, and that it asks for the production or exemplification of a public document.
The statute under which a call is made on a Department is as follows:
Sec. 1076. The said court shall have power to call upon any of the Departments for any information or papers it may deem necessary, and shall have the use of all recorded and printed reports made by the committees of each House of Congress, when deemed necessary in the prosecution of its business. But the head of any Department may refuse and omit to comply with any call for information or papers when, in his opinion, such compliance would be injurious to the public interest.
It will be observed, by the terms of the law, the court has discretionary power in the matter; and it does not follow, because an application is made for the allowance of an order on a Department for “ information or papers,” that the order will be made. The court, by an inspection of the application and record, must determine when it is necessary to issue a call upon a Department; and the fact that the papers are on file as public documents in a department of the G-overnment public in its character will not give the right to have the papers brought into court, or exemplified under the seal of the Department.
The discretion of the court, in making or refusing a call, is primarily governed by the determination of the question, whether the evidence would be material and competent when offered in the trial of the cause. If incompetent, the necessity of the call would not arise, and the order should not be made.
The right of the claimant to the “ information or papers” is a qualified right; not absolute.
Not only is there a discretion in the court as to the allowance of the order, but it is not absolutely incumbent upon the officer to comply when the call is made. The refusal in good faith of *218 tbe head of a Department, upon the grounds of public policy, to grant the request, would be no disrespect to the jurisdiction and authority of the court, as it would be in strict accordance with the discretion of the Department under the statute.
Having decided that the competency of the evidence may be raised by the issue of the motions, it remains for us to consider the competency of the testimony in the trial and determination of the cause.
It is stated that the Post-Office Department, in the execution of a like contract as to like service, in the city of Philadelphia, construed the contract in such a way as to sustain the theory of construction upon which the claimant bases his right to a recovery.
We are asked, in the construction of the terms of the contract, to consider the act of the defendants by the officers of the Post-Office Department and a third person in their dealings with a similar agreement. “Iu general, a contract must be construed by the provisions contained in it, and not by anything dehors; but still, in some cases, the courts will look at the subsequent acts of the parties, although not subsequent declarations or admissions, in order to ascertain their intention at the time of making the contract.” (Chitty on Contracts, vol. 1,p. 126.)
If the evidence is competent in any view of this case, it must be as establishing a usage governing the interpretation of the agreement. It is not, as to a condition surrounding the parties at the time the contract was made, but an isolated fact, growing out of and dependent upon what the defendants and a third party did in relation to a similar contract. Giving the claimaut the most liberal construction of what he intends to prove, the testimony falls very far below the requirements of law in the establishment of a usage which might be considered by the court in construing the terms of a written agreement.
In the light of our present information of the cause, we are not enabled to perceive that it would be competent for the claimant to prove the act of the defendants in relation to a similar contract as a medium of interpretation.
The fact of the interpretation of the Philadelphia contract did not exist at the time the parties contracted as to the New York service, and if competent as testimony to prove a usage, it is open to the objection that it is subsequent to the time the *219 parties fixed tbeir respective liabilities by the terms of tbeir written agreement. A usage becomes a part of an agreement because of its existence at tbe time tbe agreement was made, and by operation of law it attaches to and interprets its provisions. Tbe court by an inspection of tbe record does not perceive bow a usage becomes important in this case. The law upon tbe subject of tbe construction of a contract in the light of a usage is stated by Chitty as follows:
“ So in tbe case of mercantile contracts, although the meanings of particular mercantile expressions may be shown by parol testimony; yet, if the terms of tbe contract be unambiguous, if tbe expressions be in words of general, not technical import, and tbeir meaning be clear, oral testimony of a usage of trade, or particular intention, at variance with such meaning, can not be admitted.”
Mr. Justice Story, in Schooner Reeside (2 Sumner, 369), says:
“The true and appropriate office of a usage or custom is to interpret the indeterminate intentions of the parties, and to ascertain the nature and extent of their contracts, arising, not from express stipulations, but. from mere implications and presumptions, and acts of doubtful and equivocal character. It may also be admitted to explain the true meaning of a particular word or of particular words in a given instrument, where the word or words have various senses, some common, some qualified, and some technical, according to the subject-matter to which they are applied. But I apprehend that it can never be proper to resort to any usuage or customs to control or vary the positive stipulations of a written contract, and a fortiori, not in order to contradict them. (Whitmoer v. The South Boston Iron Co., 2 Allen, 60.)”
In the case cited (107 U. S. R., 437) the Supreme Court in substance said: “ In construing contracts, a court may not only look to its terms, but to their subject-matter and the surrounding circumstances, and avail itself of the same light which at the time of making them the parties possessed.”
The testimony sought in this case does not come within the rule of construction prescribed by the Supreme Court; it is not as to wha-t existed at the time of the making of the contract, but something arising afterward between the defendants and a stranger to the agreement.
In order that a usage may be invoked, it must exist at the time the contract was made, as entering into and forming a part of the agreement of the parties. It is upon that theory that it is admitted in ascertaining the intent of the parties.
*220 The motion of the Assistant Attorney-General will be sustained, and the order heretofore granted will be revoked; and if upon the trial of the case the court should come to the conclusion that the testimony is material and competent, the action of the court in the revocation of the order will be reconsidered.