Campbell, Chief Justice,
delivered the opinion of the court:
The plaintiff sues under section 162 of the Judicial Code, which confers jurisdiction upon the Court of Claims to determine the claims of those whose property was taken subsequent to June 1, 1865, under the provisions of the act of March 12, 1863, commonly known as the captured or abandoned property act, 12 Stat., 820, “where the property so taken was sold and the net proceeds thereof were placed in the Treasury of the United States.” It is accordingly alleged that there was taken from John Collins in August, 1865, 432 bales of cotton, of which he was the owner; that it was taken by a special agent of the Treasury Department, and that “ thereafter said cotton was sold by agents of said department and the proceeds thereof,1"after deducting all expenses, were placed in the Treasury of the United States.”
Several defenses are suggested by the defendant to the effect that the cotton had been sold by John Collins to the Confederate Government; that he was not the owner of it at the time of seizure; and that in any event the evidence does not show that the cotton of John Collins was sold and the proceeds of that sale placed in the Treasury.
The undisputed facts make the case one of easy solution and render it unnecessary to consider some questions presented by the briefs and in argument. These undisputed facts are that there were taken, on or about the time mentioned in the petition, from John Collins, 432 bales of cotton, then stored in a warehouse at Demopolis, Alabama; this cotton was seized by one Montague, an agent of the Treasury Department, who had been employed by the supervising special agent of the Treasury Department to collect “ Government cotton.” Montague was, by the terms of his employment, to receive as compensation one-fourth of the *45 cotton, or one bale ont of four in excess of 100 bales which, should be collected by him, and he assembled a large amount of cotton, storing a considerable portion of it at the warehouse where the Collins’ cotton was stored. The exact number of bales so collected is uncertain, but he shipped from Demopolis to the agent at Mobile at least 1,362 bales of cotton. Part of this, namely, 793 bales, so shipped, had arrived at Mobile by boat called Jackson's Flats, and included in this shipment were 372 bales of the Collins cotton, the same bearing the mark of Collins. The supervising special agent at Mobile allowed to Montague, as compensation in kind, for cotton the latter claimed to have collected, 700 bales of the shipment of 793 bales which had arrived at Mobile per Jackson's Flats, and what Montague did with the same does not appear. The 372 bales of the Collins cotton, which were included in the shipment per Jackson's Flats, went to Montague.
Of the 1,362 bales accounted for by Montague to the agent at Mobile, 439 bales were shipped to New York and sold, and the net proceeds of this sale, aggregating $18,192.26, were placed in the Treasury of the United States. The 93 bales out of the shipment of 793 bales to Mobile were after-wards repacked in 80 bales and shipped to New York, but no part of the Collins cotton went into the shipment to New York. The 60 bales of the Collins cotton remaining after the shipment of the 372 bales already mentioned per Jackson’s Flats were included as part of another shipment from Demopolis of 152 bales to the agent at Mobile on Bridges Flats, but what became of this shipment does not appear. There is no record of its receipt at Mobile or of any sale of it.
It thus definitely appears that the Collins cotton was not sold and the proceeds placed in the Treasury.
The captured or abandoned property act, or section 162 of the Judicial Code, authorizes a recovery by the proper owner of the net proceeds of the sale of his property that was seized and sold where such net proceeds were paid into the Treasury of the United States. This is recognized in the plaintiff’s petition. From the very first, in cases involving the seizure of property under the act mentioned, the rule was stated to be, and has been adhered to, that a claimant *46 can only recover such proceeds of the sale of property as is shown to have gone into the Treasury. Thus in Gaither's Case, 3 C. Cls., 191, decided in 1867, it was said in an opinion by Judge Nott: “But, however fraudulent the transaction may have been, this court can not go beyond, the proceeds which have actually found their way into the Treasury, and the claimants in such cases must seek their further relief in an action against the parties who have conspired to defraud them.”
In the case of Irvine & Field, 18 C. Cls., 615, it appears that cotton belonging to the plaintiffs had been seized by officers of the Government in Mississippi, who shipped it to another officer at Cairo, Ill., by whom it was received. It was there libeled'and sold by an order, of court under the confiscation act. Another party than the plaintiffs appeared and claimed the proceeds, and these were paid over to such party by an order of the district court. Irvine and Fields^ the owners, and plaintiffs in the suit in this court, were denied relief. In the opinion by Judge Richardson it is said, with reference to the captured or abandoned property act: “ It gave no remedy to those whose property, although seized by officers of the United States, was lost, stolen, or otherwise so disposed of that no proceeds ever reached the Treasury.” See Spencer's Case, 8 C. Cls., 288, affirmed by the Supreme Court, 91 U. S., 577.
It is useless, however, to multiply authorities upon this question, because the measure of proof required is fully stated in the Ross Case, 92 U. S., 281, as follows:
“ It is incumbent upon a claimant, under the captured or abandoned property act, to establish by sufficient proof that1 the property captured or abandoned came into the hands of a Treasury agent; that it was sold; that the proceeds of the sale were paid into the Treasury of the United States; and that he was the owner of the property, and entitled to- the proceeds thereof. * * * All this is essential to show that the United States is a trustee for him, holding his money. * * * There must be evidence connecting the receipt of it by the Treasury agent with the payment of the proceeds of sale of that identical property into the Treasury.”
*47 This is conclusive of plaintiff’s case. The facts not only-fail to show that the Collins cotton was sold and the proceeds of the sale placed in the Treasury, but they affirmatively show that all but 60 bales of the Collins cotton was delivered to the collecting agent in part payment of compensation awarded him, and that the remaining 60 bales are not accounted for. All that appears with reference to the proceeds in the Treasury of sales of the cotton collected at Demopolis, where the Collins cotton was seized, is that 439 bales out of all that was taken were sold in New York and the proceeds thereof placed in the Treasury. Who the owners of this cotton were is immaterial, because, as has been stated, no part of it was the cotton taken from Collins.
There can not be any question here such as was presented in the Intermingled Cotton cases, 92 U. S., 651. In that case large quantities of cotton were captured from different owners and subsequently intermingled and stored in a common mass, then sent forward and sold by the Treasury agent in the same intermingled condition and the proceeds of sale paid into the Treasury as a common fund. It was found as a fact that the cotton of each of the claimants contributed to and formed a part of the mass that was so intermingled and sold. The court brought all of the parties in interest before it and distributed the fund in the Treasury to the several claimants, making them bear ratably the expenses and losses. But the Collins cotton never became intermingled with or a, part of a mass wherein the identification of the several parcels could not be made.
On the contrary, that cotton, except as to the 60 bales mentioned, was fully identified, and was turned over to the collecting agent. It never became part of that which was shipped to New York and sold. The taking of the Collins cotton to pay the agent’s compensation does not alter the situation, and serves to demonstrate that no proceeds of a sale of it found their way into the Treasury. By the terms of the statute (sec. 162) it is essential to a plaintiff’s case that his property was “ taken, was sold, and the net proceeds thereof were- placed in the Treasury of the United States.” We deem it unnecessary to discuss the further question of the *48 sales by Collins to the Confederate Government. We think the facts show such a sale.
Two motions have been made for calls on the Treasury Department, one of them filed in October, 1920, and the other in December, 1920, the latter being presented to the court while the case was in process of trial. Both motions are overruled. The first of them seeks' to have from the Treasury Department certain information from the books of the warehouse where it is said Collins stored cotton in the years 1862,1863, and 1864, showing the receipt at said warehouse or the discharge therefrom of cotton of said Collins. These books are alleged to be in the department’s possession. The last motion seeks to ascertain the names of the owners of the part of the cotton that was shipped from Demopolis and afterwards sold. The original report of the Treasury Department was filed in this court in 1912. Testimony for the plaintiff was taken in 1913. If the matter now sought by the call was deemed to be material (though its materiality does not appear) it should have been requested sooner, this case having been upon the court’s calendar for a long time and repeatedly called to the attention of the parties. The power granted the court to make calls upon executive departments does not confer absolute rights upon a litigant. The court has a discretion as to when the call may be allowed. Woolverton case, 26 C. Cls., 215. In view of the statement of John Collins himself, made in an application to the President of the United States in 1865, appearing in the record, and the testimony of the principal witness for the plaintiff we will not further delay the case to make the call first mentioned, and particularly so when the view we have expressed disposes of the case.
The petition should be and is dismissed.
Graham, Judge; Hat, Judge; DowNey, Judge; and Booth, Judge, concur.