Per Curiam:
The history of this case to the time of the court’s action in sustaining plaintiff’s application for a call for the production of certain letters, reports, documents, and papers for use as evidence on the trial is set forth in a previous opinion, the call having been directed to the Secretary of the Treasury. 48 C. Cls., 454.
*161 The nature of the return makes necessary another statement of the material facts in Order that the present opinion may be better understood in the light of the refusal to give any information or to produce any documents, without which the court is unable at this time to bring the cause to a hearing.
Plaintiff contracted with the defendants for the consideration exceeding one million dollars to furnish all labor and materials and perform all the work required for the interior finish of the new customhouse in New York City. The work was to be completed on or before October 15,1906. It is made to appear to the court that certain work deemed desirable was not done under the contract for the want of an appropriation by Congress; that subsequently; and before the time for completion, the necessary appropriations were made, and when made plaintiff was peremptorily ordered, about October 22,1906, to furnish labor and materials and perform all the work required for restoring to the interior finish of the building certain items omitted under the original contract, though embraced in the original proposals. Defendants notified plaintiff that they would allow him an additional sum of more than two hundred thousand dollars for the work of restoration, and time fixed by the Government for completion was June 1, 1907. It appears that the contractor was never requested to, and never did, assent to the modifications and changes whereby certain omitted work was thrust upon him and which involved him in other undertakings. This work and the time fixed for completion are charged to have been arbitrarily made. Plaintiff, however, it appears, prosecuted the work provided for in the original and supplemental contract; performed extra work and supplied extra material for which he was partly compensated. The extra work was done and the material furnished, was accepted by the defendants, and after acceptance of the building plaintiff demanded compensation for unpaid extras and sought to have returned to him something over fifty thousand dollars as and for liquidated damages or penalty which had been withhold by the *162 Government and which sums it is charged were unlawfully held.
For damages on account of the alleged delays charged to have been caused by the Government; for unlawful deductions and retention of moneys on account of alleged omissions and defects in the work; for extra costs and expenses due to the stated arbitrary rejection of certain work, labor, and materials; and for extra work and materials ordered by defendants not paid for, the petition seeks on all matters stated to recover the sum of $123,441.37.
The documentary evidence called for appears to consist of original letters relating to bids of the several contractors for the interior finish of the building; letters and reports relating to the condition of the work and bearing upon the question of the delays for which the contractor was penalized; the recommendations of officers of the Government on the work respecting deductions under the contract and the causes therefor; correspondence with reference to progress under the eight-day notice relative to expediting the completion of the mechanical equipment and the installation of furniture, and correspondence between the agents of the Government relating to the matter of the assessment of liquidated damages at $400 a day because of orders from the defendants stopping the contractor from work on important parts of the work under the contract, and likewise relating to the delays which other contractors imposed upon plaintiff in his own undertaking. The correspondence embraced in the call refers to the withholding of payments and the mode and manner of carrying on the work, and information disclosed by that correspondence respecting the suspension of placing trim wood; the instructions directing the architect to keep a report of delays incident to suspensions of the work where the contractor had been ordered to suspend, and letters and official reports in reference to statements with, and in the matter of time penalties against, other contractors engaged in the superstructure of the buildings, as well as against those contractors who had agreed to supply the mechanical equipment. Whether also any other contractors were penalized *163 for delays which in turn delayed this plaintiff; for daily audited cost reports and items of work performed in the expenditure of those amounts retained from the contractor and alleged to have been expended by defendants in replacing defective work after the work of this contractor had been accepted; and, finally, the estimates the architect submitted within certain dates to the Treasury Department with a view of obtaining further appropriations for changes and new construction in the building.
These are matters of serious import to this contractor. If he has been imposed upon by subordinate agents of the Government; if improper orders caused delay without fault on his part; if the construction of the interior finish was delayed by other parties to the contract doing outside work; and if the plaintiff was charged $400 a day for a period of 121 days and the official files will throw light on the subject, the documentary evidence ought to be supplied in order that the court may do justice between this contractor and the Government.
The court was careful in the first instance to exclude from the call matters which in the judgment of the court seemed irrelevant and immaterial. As to the matters which the court did embrace in the call, the court was of opinion, and yet is, that the documentary matter called for was and is now relevant, material, and competent. The documents and papers are sufficiently descriptive of what is wanted so as to enable any intelligent clerk in the ordinary discharge of his duty to examine the records and have the copies certified. But the Secretary of the Treasury, by his assistant, makes the return that the call is not sufficiently specific to enable the Treasury Department to answer the same “ without an unreasonable expenditure of time and labor and the exercise of unusual judgment and discretion,” accompanied by the further statement “that the documents covered by the call contained matters of a strictly privileged nature, some of them relating to other contracts for the construction of the building in question, such as should not for the public interests be spread upon the records” of this court. The *164 court is informed that the department respectfully declines to furnish the papers, as, in the opinion of the Treasury Department, “to comply therewith would be injurious to the public interest.”
The law in relation to calls on the departments as carried from prior enactments into the Judicial Code effective January 1,1912, is as follows:
“ Sec. 164. The said court shall have power to call upon any of the departments for any information or papers it may deem necessary, and shall have the use of all .recorded and printed reports made by the committees of each House of Congress, when deemed necessary in the prosecution of its business. But the head of any department may refuse and omit to comply with any call for information or papers when, in his opinion, such compliance would be injurious to the public interest.”
This section is a verbal reenactment, without change, of section 1076 of the Revised Statutes, which in its terms reenacts the provision of the eleventh section of the original organic act of this court, act of February 24,1855, section 11, 10 Stat. L., 614.
It thus appears throughout the entire existence of this tribunal that it has been deemed necessary by Congress that the court should have power to obtain, the essential information from the various departments of the Government to enable it intelligently to adjudicate' the matters coming before it.
A consideration of the character of the cases coming before us will show how necessary it is that the court should exercise this power. Every case concerns the official action of some department or officer of the Government. It is hardly conceivable that a case should arise which does not involve some official action of an officer of the Government of which there is a record in some of the Government offices at the seat of government.
Such cases can not be properly and fully adjudicated without the court having before it the official record of the transaction as contained in the files of the department in which the case originates. If the exercise of the power by the *165 court be essential to the proper adjudication of the case, no less is it important for the various departments of the Government to comply with the calls so made.
The power given to a head of a department to omit to comply-with a call for information or papers is not an arbitrary power to be exercised at will and to make the law and principle in regard to these calls differ in the case of' one department from what it would be in that of another. It is a legal discretion to be exercised under the circumstances of a particular case. Matters of state sometimes occur in which great political and public interests would be injured by premature disclosure of Government plans. Congress has in very many instances refrained from compelling the disclosure of documentary secrets or plans for national defense where the public interest requires that such matters be withheld from publication. Assuredly it was never contemplated that the Government should withhold information because the response to a call might show a just debt due to a claimant, or possibly to some one else. If it was the object of the Government to protect itself against the payment of its debts, that object could readily be obtained by denying the right of suit in all cases. The act authorizing this court to render judgment as it has now been brought forward in the Judicial Code conferred a very broad power. Claims founded upon the Constitution or any laws of Congress, except for pensions, or upon any regulation of an executive department, or upon expressed or implied contracts with the Government, must be heard and determined to judgment by the Court of Claims. Damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty, if the United States were suable, are included within the general jurisdiction. The section now known as 164, Judicial Code, was brought forward, as we have seen, from the organic act of February 24, 1855, 10 Stat. L., 614. Section 164 of the code as originally enacted and now in full force was intended to facilitate the power to adjudicate. It thus appears to have been the will
*166 -Opinion of the Court.
of Congress that its just indebtedness shall be ascertained by authoritative judicial inquiry, and to make the inquiry effective the records of the Government are to be furnished for the information of the court to carry out the necessary jurisdiction. Taking these statutes together, it was never within the contemplation of the law since the foundation of the court that a department should refuse to furnish the papers or information called for by the court without some just or legal excuse for the refusal.
There are analogies from the ordinary procedure of the law of evidence which enables the court to state rules which should be a guide in the procedure in cases of arbitrary refusal to furnish papers such as have been called for in the instant case. Where a party without just reason after notice to produce papers given by an opposite party refuses to produce the necessary documents, secondary evidence of contents become admissible.
In Butler v. Maples, 9 Wall., 766, where an official permit was called for by one party from the opposite party and not produced on notice, the court said, page 778:
“ The permit itself would have been the best evidence; but it was not produced on call, and therefore secondary evidence was admissible.”
Unsatisfactory as such proof is the court has the option, and, in fact, it would be the court’s duty, under the rules of evidence, to admit secondary testimony upon refusal of the officers of the Government to furnish original and competent evidence in its possession.
Furthermore, there is involved in this case the right to summon the architects, superintendents, inspectors, and other officials to testify and to accompany the summons with a subpoena duces tecum to bring with them copies of papers connected with the work of the plaintiff as one of the contractors on the building. This principle, if adopted, would be as unsatisfactory to one party as to the other. It would probably be more injurious to the public interest than to the private interest. There would arise probably a miscarriage of justice in many cases of importance to plaintiffs prosecuting just claims against the Government; and, on the other *167 hand, it would put the Government at great disadvantage in defending many of the suits against it.
Again, if such a practice were sanctioned unnecessary difficulties would arise and details would be of such character as to have the effect of being a practical denial of justice in very many instances. The idea of experimenting upon the court by withholding evidence called for at the instance of the opposite party, and later produce it when it would be to the advantage of the party out of whose possession it comes, would have results never contemplated when Congress provided that calls should be made upon the department for matter contained in its official records.
Under these circumstances we do not think that the refusal to produce evidence in the defendant’s possession is just.
The statutory call for evidence in all cases in this court is probably more analogous to the bill of discovery as used in chancery than it is to the use of the subpoena duces tecum. The call is only intended to elicit the truth without wrong to the party examined. The Government is not required to answer questions or supply papers which on the grounds of public policy it is' entitled to resist. Official persons may refuse to disclose any matter of state the publication of which may be prejudicial to the community at large. This rule does not apply to matters of business of private individuals with the Government which results in the bringing of a suit against the United States.
If some of the matters called for are not sufficiently specific, that fact should not defeat a response as to the other matters named.
We incline to the view that the grounds assigned for a refusal to furnish the information called for were perhaps not fully considered or were inadvertently refused by the Secretary. At any rate, we will order a repetition of the call through the ehief clerk and in connection therewith that a copy of this opinion be furnished to the Secretary of the Treasury.
In the meantime further action on the motions in the cause generally will be postponed.