Booth, Chief Justice,
delivered the opinion of the court:
Section 164 of the Judicial Code confers jurisdiction upon this court to call upon any Department of the Government for information or papers considered by the court as necessary in the adjudication of cases before this court. This section in its entirety contains the following provisions:
Seo. 164. The said court shall have power to call upon any of the departments for any information or papers it may deem necessary, and shall have the use of all recorded and printed reports made by the committees of each House of Congress, when deemed necessary in the prosecution of its business. But the head of any department may refuse and omit to comply with any call for information or papers, when, in his opinion, such compliance would be injurious to the public interest.
The plaintiffs in the brief do not specifically address an argument upon the refusal of the Navy Department to respond to the call involved in this controversy. This is doubtless due to the express provisions of Section 164. The court is without jurisdiction to do more than issue the call and in the event of a refusal to answer it call the attention of the department to the character of information sought and its irrelevancy to any existing public interest.
*678 Tbe extent to which we did go is exemplified in the case of Robinson v. United States, 50 C. Cls. 159. On page 165 of this opinion the court said:
The power given to a head of a department to omit to comply with a call for information or papers is not an arbitrary power to be exercised at will and to make the law and principle in regard to these calls differ in the case of one department from what it would be in that of another. It is a legal discretion to be exercised under the circumstances of a particular case. Matters of state sometimes occur in which great political and public interests would be injured by premature disclosure of Government plans. Congress has in very many instances refrained from compelling the disclosure of documentary secrets or plans for national defense where the public interest requires that such matters be with- ■ held from publication. Assuredly it was never contemplated that the Government should withhold information because the response to a call might show a just debt due to a claimant, or possibly to some one else.
and on page 167 the following additional comment appears:
The Government is not required to answer questions or supply papers which on the grounds of public policy it is entitled to resist. Official persons may refuse to disclose any matter of state the publication of which may be prejudicial to the community at large.
Plaintiffs’ position subsequent to the failure to secure the testimony listed in the call compelled resort to secondary evidence, and it is the record made in this effort that formulates the important issue now before us. Patent rights, as plaintiffs assert, are concededly property rights, and the Constitution precludes the right of the Government to take private property for a public use without compensation. The plaintiffs did not need to cite the innumerable cases cited in the brief to bring to the court’s attention these established principles of law.
Undoubtedly the act of June 25, 1910, as amended by the act of July 1, 1918, supra, accords the plaintiffs the right to file the petition which was filed in this case, and the court has jurisdiction to hear and adjudicate the issues raised. As to these and the foregoing propositions thei'e cannot and *679 does not arise any controversy whatever. The defendant in nowise challenges them.
The vital issue is one of proof. May an officer of the Navy be compelled to disclose what he and his superior officer declare to be military secrets, the disclosure of which they assert would be detrimental to the National defense? The patented devices involved and the devices used by the defendant are obviously of great importance in the field of Naval armament. If a testimonial privilege does not extend to a Naval officer, especially with respect to armament employed in actual service, the Government would in many instances be precluded from availing itself of instru-mentalities of defense unknown to all the other Naval powers of the World.
There are many English cases, some of ancient date, which have extended the rule now contended for by the defendant to such an extent as to incite the stringent criticism of the text writers. Wigmore on Evidence, Vol. IV, Sec. 2375, et seq. The cases relied upon to sustain a rule contrary to one long recognized have to do largely with confidential communications between Government officials and the production of confidential documentary evidence. We do not review them; it is not essential. Greenleaf on Evidence, Vol. 1, Sec. 250, et seq.
The absence of adjudicated cases respecting a testimonial privilege involving a disclosure of armament in actual use by the military arm of a Government, confirms the recognition of the privilege which protects secrets of State in military affairs. In time of war the rule prevails, and there is no reason assignable for its non-application in times of peace. National Defense Act, United States Code, Title 50, Secs. 31, 32, and 34.
We need not advert to the importance of National Defense. It is sufficient to observe that Infante, the plaintiffs’ second witness, an employee of the contractor who furnished the Navy with its range devices, was not only precluded from disclosing the identical structure of the same by the terms of his employment, but assisted in the course of procedure adopted for their manufacture which precluded other *680 employees of the contractor engaged in manufacturing parts of the same from possessing knowledge of the devices when assembled. The Navy Department enjoined secrecy upon the contractor, and the Secretary of the Navy precluded any disclosure by an official or others in the service.
We think the witness Infante had a right to stand upon his claimed testimonial privilege. While he is a private citizen the knowledge he possesses is vital to the Government’s National defense, and he obtained it in confidential relationship with the Navy Department.
If we are correct hi sustaining the rule of testimonial privilege as it arises under the facts, the plaintiffs’ motion for the court to instruct the defendant to proceed with the case in camera must be overruled.
Two contentions are vigorously set forth in plaintiffs’ brief: First, “If this court refuses to permit the petitioners to establish proof of infringement they will be deprived of redress in the only court having jurisdiction of the suit and will thereby be deprived of a property right without due process of law.” The answer to the first contention lies in the fact that this court is not refusing and does not refuse to permit the petitioners to establish their case. Isham v. United States, 76 C. Cls. 1, 60, 61. We are passing upon a rule of evidence as it pertains to two certain witnesses.
The second contention is in the following language: “IJj, this court refuses to permit the petitioners to establish proof of infringement, the jurisdiction of the court, as conferred by Congress under the act of June 25, 1910, as amended July 1, 1918, is rendered null and void.” This contention is subject to the same observations made as to the first.
The Government under the statute cited consents to be sued for an infringement of patent rights. This conceded right imposes upon the plaintiffs the same burdens and exacts the same degree of proof as in any other court of law requisite to establish infringement and recover damages therefor. The law of evidence is precisely the same in this court as in a District Court, and if under it a testimonial privilege obtains precluding the production of testimony from witnesses, it is a factor incident to the litigation, one which the plaintiffs must meet, and obviously one to be *681 anticipated in the prosecution, of the suit. Moore v. United States, 91 U. S. 270; Bliss Co. v. United States, 53 C. Cls. 47 (253 U. S. 187).
An established rule of evidence does not nullify a jurisdictional act. It may and often does preclude recovery under the act. The remedy is not impaired. The assertion of a right under the act depends for validity upon rules of proof existing prior to and at the time the remedy was granted. It is manifestly not unusual for a case to fail for lack of proof or inability of the plaintiff to establish a right because of the restrictive force of certain rules of evidence. The plaintiffs are not precluded from resorting to other testimony and secondary evidence. IsTiam case, supra.
The testimonial privilege applying to the facts of this case is predicated upon the principle of the public good and the right of the Sovereign to maintain an efficient National defense — a public interest of such paramount importance as in and of itself transcends the individual interests of a private citizen. We need not, we think, cite cases involving the stated principle. During the late war the maintenance of secrecy was imposed upon inventors of military ordnance, and their applications for patents were impounded by the Commissioner of Patents to insure the same. Act of October 6, 1917 (40 Stat. 394, Ch. 95). See also National Defense Act, supra; Totten v. United States, 92 U. S. 105.
The defendant cites authorities holding that under the laws of England an English patentee may not obtain discovery from the Crown in suits against it for an infringement of a patent. From this established English rule it is contended that the plaintiffs, subjects of Great Britain, are allowed to sue the United States under Section 155 of the Judicial Code, and are likewise precluded from obtaining discovery from the Government of the United States.
Section 155 of the Judicial Code is in the following language:
Aliens who are citizens or subjects of any government which accords to citizens of the United States the right to prosecute claims against such government in its *682 courts, shall have the privilege of prosecuting claims against the United States in the Court of Claims, whereof such court, by reason of their subject-matter and character, might take jurisdiction.
The basis for defendant’s contention is that while foreign claimants may under the terms of the above section sue the United States they do not acquire greater rights against the United States than prevail against their own Sovereigns. The doctrine of reciprocity is invoked with strictness. We do not accede to the contention. The court discussed a similar contention in the case of Brodie v. United States, 62 C. Cls. 29. We quote from that opinion as follows (p. 46):
Section 155 gives the right to prosecute claims against the United States in this court to “aliens who are citizens or subjects of any government which accords to citizens of the United States the right to prosecute claims against such government in its courts.” It is conceded in argument “that United States citizens have the same standing in British courts as do British subjects”, but contended that “neither could or can prosecute an action for tortious infringement against the Crown.” The contention implies too narroAv a construction of section 155 while the concession embodies the true spirit of the section. It is a “reciprocity” provision, and the admission of citizens of the United States to all the rights of British subjects in British courts certainly embodies a full measure of reciprocity. The exclusion suggested is operative against British subjects as well as American citizens. The true test is not whether a citizen of the United States may prosecute an action of a particular nature in a British court but whether the doors of British courts are open to American citizens for the prosecution of “claims” against the Crown, but necessarily only such claims as might be prosecuted by British subjects, for there as-here there are classes of action as to which the sovereign has not consented to be sued. We think this plaintiff has standing in this court.
It is true the Brodie case did not involve a question of secrecy, but the absence of the issue is, we think, immaterial in view of the construction given to that section of the Code.
The final argument advanced is that the exercise of a testimonial privilege, as in this case, places in the hands *683 of tbe Navy Department a power and authority to defeat all patent suits against the Government. The presumption obtains that in the exercise of the authority good faith will characterize the conduct of the Government officials in discharging their duties. In any event, in this case there is no proof that it has been exercised arbitrarily, capriciously, or with intent to injure plaintiffs. Until that issue confronts us in a proper proceeding we express no opinion with respect to it.
Plaintiffs’ motion is overruled. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Green, Judge, concur.